UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHRISTOPHER L. CHILDS,

                Petitioner,

                                            Case No. 21-cv-1219-pp

    v.

UNITED STATES OF AMERICA,

                Respondent.

---

**ORDER DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE (DKT. NO. 1), DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY AND DISMISSING CASE**

---

On October 20, 2021, the petitioner, representing himself, filed a motion under 28 U.S.C. §2255, asking the court to vacate, set aside or correct the sentence imposed in United States v. Childs, Case No. 18-cr-69-pp (E.D. Wis.). The motion included four ineffective assistance of counsel claims. Dkt. No. 1 at 6-10.[1] At screening, the court allowed him to proceed on the ground that his attorney coerced the petitioner to sign the plea agreement based on threats and false promises. Dkt. No. 2 at 12. According to the petitioner, his attorney said that the petitioner's acquaintance had received a forty-nine-year sentence, and that unless the petitioner pled guilty, the mother of his children (and his co-defendant) would go to prison for fifteen years and his children would be split

---

[1] The court will cite to documents filed in this *habeas* case (21-cv-1219) as "Dkt. No." The court will cite to documents filed in the petitioner's underlying criminal case (18-cr-69) as "Criminal Case, Dkt. No."

1

up and placed in Child Protective Services. Dkt. No. 1 at 9, 10. The petitioner also claimed that his attorney told his sister and daughter that the petitioner would receive no more than nineteen years if he pled guilty. Id. at 10.

The parties have briefed the issue, and the court has reviewed the affidavits from the petitioner and his former attorney. Dkt. Nos. 13, 18-1. Based on the petitioner's statements at his plea hearing and the evidence in the record, the court will deny the petitioner's motion, decline to issue a certificate of appealability and dismiss the motion (and the case).

## I.    Background

### A.    Underlying Criminal Case

#### 1.    *Indictment*

On July 24, 2018, the grand jury returned a second superseding indictment charging the petitioner with one count of conspiracy to engage in sex trafficking under 18 U.S.C. §1594(c); five counts of sex trafficking involving force, fraud or coercion under 18 U.S.C. §§1591(a)(1) and 1591(b)(1); and one count of sex trafficking of a child and by force, fraud and coercion under 18 U.S.C. §§1591(a), 1591(b)(1), and 1591(b)(2). Criminal Case, Dkt No. 18.

#### 2.    *Guilty Plea*

In September 2019, the petitioner signed a plea agreement, pleading guilty to one count of sex trafficking by force, fraud or coercion in violation of 18 U.S.C. §§1591(a)(1) and 1591(b)(1). Criminal Case, Dkt. No. 47. In the plea agreement, he acknowledged that he fully understood the terms and conditions of the plea agreement, id. at ¶3, and admitted that the government would be

2

able to prove the facts in the attachment (pp. 14-15 of the agreement) beyond a reasonable doubt, id. at ¶5. He acknowledged that he understood the offense carried a minimum term of fifteen years in prison. Id. at ¶6. He acknowledged that "no threats, promises, representations, or other inducements" (other than the promises set forth in the written plea agreement) had been made to cause him to plead guilty. Id. at ¶44. The petitioner also acknowledged that the court could impose any sentence up to life in prison. Id. at ¶6. He acknowledged that he understood that the sentencing court was not bound by the agreement and that he could not move to withdraw the guilty plea solely as a result of the sentence imposed. Id. at ¶¶23, 24. The defendant acknowledged the voluntariness of his plea:

> 44. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

Id. at ¶44. On its signature page, the agreement also included the following acknowledgment:

> I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Id. at 13.

3

3. *Plea Hearing*

The court conducted a change-of-plea hearing on June 4, 2021. Criminal Case, Dkt. No. 105. At that hearing, the petitioner swore under oath that his answers would be truthful, and the court warned him that he could be prosecuted for lying under oath. Id. at 3. The petitioner told the court that he was satisfied with his attorney's representation. Id. at 9. After the petitioner admitted to the offense conduct, the court explained that a mandatory minimum of fifteen years meant that the court could not impose a sentence less than fifteen years without a motion from the government. Id. at 27, 28. The following exchange took place:

> THE COURT: So, Mr. Childs, last couple of questions. Has anybody inside this courtroom, or more importantly, I suppose, outside of this courtroom, anyone made any threats to you to try to convince you to take this plea? Anyone told you that they would harm you or people you care about, guaranteeing that you're going to go to prison for X. amount of time, any kind of threat to try to force you to accept this plea?
>
> THE DEFENDANT: No.
>
> THE COURT: There is a promise in this plea agreement from the Government to you, and that promise is at page six, paragraph 22. The Government has agreed as part of this plea agreement that after I have calculated the sentencing guidelines and after I figured out what the range is, the Government is going to recommend that I give you a sentence no greater than whatever the low end of that range is. That's what they are going to recommend.
>
> Now, Mr. Sanders has not made any promises. Mr. Sanders is free to argue whatever he wants to in terms of a sentence, but this is the Government saying that whatever the guideline range turns out to be, they're going to ask me to sentence you at the low end of it. Do you understand that?
>
> THE DEFENDANT: Yes.

4

THE COURT: Other than that promise, other than that one promise from the Government, has anybody inside or outside this courtroom promised you anything to try to convince you to take this plea, told you that they'll give you money or they'll take care of or your family or that they'll promise you that you're only going to get a certain sentence? Anybody promised you anything to get you to take this agreement?

MR. SANDERS: Just a minute.

(There was discussion off the record.)

MR. SANDERS: Thank you, Your Honor.

THE COURT: So I'll ask the question again. Has anyone promised you anything other than the one promise in the plea agreement from the Government to get you to accept this guilty plea?

THE DEFENDANT: No.

THE COURT: Are you pleading guilty today, Mr. Childs, because you are guilty of the charge in count four?

THE DEFENDANT: Yes.

Id. at 35-36.

At the end of the hearing, the court found that the defendant had entered his plea knowingly, voluntarily and intelligently and that he understood the rights he was giving up, the maximum and minimum possible penalties and the uncertainty of the final sentence. Id. at 37.

    B.    <u>Motion to Vacate, Set Aside or Correct Sentence</u>

        1.    *Petitioner's Brief in Support of His Petition (Dkt. No. 12)*

The petitioner asserts that prior to the plea hearing, his attorney informed him of the following: (1) that federal authorities had captured an acquaintance of his in Miami and the court had imposed a sentence of forty-nine years and (2) that the mother of his children (his co-defendant in the

5

criminal case) would receive fifteen years in prison and his children would be placed in child protective services. Dkt. No. 12 at 3. He also claims that his attorney told his daughter and sister that the petitioner would not receive a sentence above nineteen years. Id. at 4. The petitioner asks the court to allow him to withdraw his plea based on ineffective assistance of counsel and coercion. Id. at 1.

The petitioner argues that the transcript from the plea hearing hides what really transpired during the plea hearing—that his attorney grabbed his hand and whispered, "*think about what you are about to say and the consequences that will follow*." Id. at 5 (italics in original). He claims that his attorney "reminded the Petitioner of his earlier threats" and "reaffirmed his position that the Petitioner would suffer drastically if he did not accept the government's plea." Id. at 5-6. According to the petitioner, he wanted to bring the issue of his attorney's threats and coercion to the court's attention but his attorney prevented him from doing so. Id. at 8.

The petitioner requests an evidentiary hearing under §2255(b). Id.

2.    *Petitioner's Affidavit* (Dkt. No. 13)

On March 5, 2025, the court received from the petitioner an affidavit—which he said was sworn under penalty of perjury, citing 28 U.S.C. §1746—asserting the following:

1)    Prior to discussing any plea agreement offered by the government I expressed my intent to challenge several factual and evidentiary aspects of my case.

2)    My attorney repeatedly informed me that the evidence was

6

overwhelming, and I would be sentenced to LIFE in prison after trial.

3) My attorney informed that the government was focusing on "*sex crimes*" because of the "*climate of society.*"

4) Prior to accepting the government's plea agreement my attorney stated that "*things were not looking good*" for me, and that I needed to "*hurry up*" and "*take the plea.*"

5) My attorney informed me that one of my "*acquaintances*" from Miami, Florida received a "*49-year sentence,*" the mother of my children (Jennifer Campbell) would receive "*15 years*" in prison and our children "*would be placed in child protective services.*" In 2020, he informed my daughter (Melissa Hoeppner) and sister (Jackie Fox) that I would "*receive no more than 19 years.*" I decided to plead guilty based on these facts.

6) At my change of plea hearing my attorney prevented me from bringing the facts mentioned above to the court's attention. When the Court provided me with the opportunity to address the "*threats*" regarding my acceptance of the plea agreement, my attorney prevented me from speaking. He asked for a minute and spoke off the record. He informed me to remain quiet and promised that everything would be ok. He stated that we didn't want to "*piss the judge off.*"

Dkt. No. 13 at 2, 3 (capitalization and italics in original).

### 3. *Government's Brief in Opposition* (Dkt. No. 18)

The government responds that the petitioner cannot demonstrate his attorney's actions fell below the standard of reasonableness or that his performance was so deficient that he was deprived of a fair proceeding. Dkt. No. 18 at 4-5. According to the government, the petitioner's allegations are "fundamentally at odds" with statements he made in his plea agreement and under oath during the plea hearing. Id. The government reminds the court that the statements made at the Rule 11 hearing are presumed to be truthful and

7

considered binding when a defendant seeks to make contrary claims in a §2255 motion. Id. at 5 (citing United States v. Martinez, 169 F.3d 1049, 1054 (7th Cir. 1999)).

The government points out that in the plea agreement, the petitioner acknowledged that "'no threats, promises, representations, or other inducements' had been made to cause him to plead guilty;" that the court could impose a sentence up to life in prison; and—just above his signature—that he was pleading "freely and voluntarily." Id. at 6 (citing Criminal Case, Dkt. No. 47 at ¶¶6, 44, p. 13).

The government recounts that at his plea hearing, the petitioner confirmed that no threats had been made to him or anyone else to cause him to plead guilty. Id. (citing Criminal Case, Dkt. No. 105 at 35). The government relies on the petitioner's acknowledgment that no one had promised that he would receive a particular sentence, that he faced a sentence up to life and he was satisfied with counsel's representation. Id. at (citing Criminal Case, Dkt. No. 105 at 9, 27-28, 35-36). The government recounts that the petitioner confirmed that there were no promises in exchange for his plea (other than the government agreeing to recommend a sentence at the bottom of the guideline range). Id. The government argues that the transcript makes clear that, after the petitioner's discussion with Attorney Sanders during the plea hearing, the court again asked whether there were any promises and the petitioner directly stated "no." Id. at 8 (citing Criminal Case, Dkt. No. 105 at 6).

8

According to the government, an evidentiary hearing is not required because the record conclusively establishes that the petitioner is not entitled to relief. Dkt. No. 18 at 9. The government maintains that the only factual dispute is the contradiction between the petitioner's representations in the plea agreement and under oath at his plea hearing and his assertions in this §2255 proceeding. Id. The government emphasizes that the petitioner's sworn representations before the court are presumed truthful and binding, which means that the dispute is immaterial. Id. (citing Jennings v. United States, 461 F. Supp. 2d 818, 823 (C.D. Ill. 2006). The government asks that if the court determines a hearing is necessary, the court give it sufficient time to transport the petitioner back to Wisconsin and to make arrangements for the victims to exercise their right to attend under 18 U.S.C. §3771(a).

4. *Affidavit of Daniel H. Sanders* (Dkt. No. 18-1)

The government filed Attorney Sanders's five-page affidavit regarding his representation of the petitioner. Dkt. No. 18-1. Attorney Sanders explains that from early May 2018 through early October 2019, he had numerous conversations with the petitioner discussing the discovery provided by the government, the government's "coercion theory" and other trial issues. Id. at ¶¶4, 5. Attorney Sanders avers that he discussed the mandatory minimum sentence with the petitioner and included comparisons of outcomes for similarly-situated defendants in the Eastern and Western Districts of Wisconsin. Id. at ¶6. Attorney Sanders avers that many of these comparisons

9

were included in the petitioner's sentencing memorandum. Id. (citing Criminal Case, Dkt. No. 79).

Attorney Sanders avers that after the second superseding indictment added Jennifer Campbell to the conspiracy count (a count that, as charged, carried a mandatory minimum sentence for both the petitioner and Campbell), the conversations with the petitioner shifted toward concern for Campbell and the petitioner's children, who were in her care. Id. at ¶8. Attorney Sanders states that the "conversations included the possibility that [Campbell] would receive a mandatory minimum sentence and that her children could end up in state care if no family members were available and willing to take the children." Id. Attorney Sanders avers that he had many conversations with Campbell's attorney, which he related to the petitioner. Id. Attorney Sanders avers that he discussed with the petitioner the possibility that Campbell could testify against him at trial to favorably resolve her case. Id.

According to Attorney Sanders, on several occasions after early August 2018, the petitioner directed him to contact the government to provide the government with additional information potentially beneficial to the resolution of his case. Id. at ¶10. Attorney Sanders avers that, by early 2019, the petitioner conveyed that he did not wish to go to trial and asked that Attorney Sanders negotiate a plea offer. Id. at ¶12. Attorney Sanders states that he reviewed the plea agreement in person with the petitioner on September 9, 2019, that he signed the agreement on September 10, 2019 and that the agreement was filed the next day. Id. at ¶¶17-19.

10

Relevant to the petitioner's allegations, Attorney Sanders avers:

20. Between September 11, 2019, and October 3, 2019, I spoke with [the petitioner] several times about the plea agreement and guidelines and sentencing issues. At no time did I "coerce" [the petitioner] into pleading guilty, nor did he complain nor suggest that I "coerced" him into pleading guilty.

21. During the change of plea hearing on October 3, 2019, [the petitioner] and I broke off the record a few times because he wanted to address the Court about the alleged victims other than AV-3 in Count Four and about guidelines and sentencing issues. I told him that we would address those issues in objections to the PSR and in a sentencing memorandum. I did not threaten or "coerce" him during those off-record conversations and I did not prevent him from addressing the court.

22. I did not tell [the petitioner's] sister and daughter in 2020 that if he signed the plea agreement, he would receive no more than 19 years in prison. On numerous occasions throughout the case before and after the change of plea hearing, and at the specific direction of [the petitioner], a [sic] spoke to [the petitioner's] sister and daughter about the charges, penalties, evidence, plea negotiations, health concerns, family issues, guideline calculations, and sentencing issues. During those conversations, I told the family that I intended to recommend a sentence of 18-19 years to the Court, but I made no promises or guarantees to [the petitioner's] family as to the sentence ultimately imposed by the Court.

Id. at ¶¶20-22.

## II.   Analysis

A petitioner seeking relief under §2255 must allege either that the sentence violated the Constitution or laws of the United States, that the court was without jurisdiction, that the sentence exceeded the maximum authorized by law or that the sentence is otherwise subject to collateral attack. 28 U.S.C. §2255(a). "Relief under § 2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a

11

fundamental defect has occurred which results in a complete miscarriage of justice.'" United States v. Coleman, 763 F.3d 706, 708 (7th Cir. 2014) (quoting Blake v. United States, 723 F.3d 870, 878–79 (7th Cir. 2013)).

> It is well-established that a district court need not grant an evidentiary hearing in all § 2255 cases. Such a hearing is not required if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *see also Menzer v. United States*, 200 F.3d 1000, 1006 (7th Cir. 2000). In addition, a hearing is not necessary if the petitioner makes allegations that are "vague, conclusory, or palpably incredible," rather than "detailed and specific." *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006). A district court, however, must grant an evidentiary hearing if the petitioner "alleges facts that, if proven, would entitle him to relief." *Id.* (citation and internal quotation marks omitted); *Stoia v. United States*, 22 F.3d 766, 768 (7th Cir. 1994).

Martin v. U.S., 789 F.3d 703, 706 (7th Cir. 2015).

The petitioner raised his ineffective assistance of counsel claim for the first time in the §2255 motion. Normally, the doctrine of procedural default would bar his claim because the petitioner did not raise it before this court or the Seventh Circuit. But the Seventh Circuit generally allows a petitioner to raise an ineffective assistance of counsel claim for the first time in a §2255 motion "regardless of whether the petitioner could have raised the claim on direct appeal." Delatorre v. United States, 847 F.3d at 845 (quoting Gaylord v. United States, 829 F.3d 500, 506 (7th Cir. 2016)).

To prevail on an ineffective assistance of counsel claim, the petitioner must show that (1) his counsel's performance was deficient and (2) that he was prejudiced by deficiencies in his counsel's performance. Strickland v. Washington, 455 U.S. 668, 687 (1984). To show deficient performance, the

12

petitioner "must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688. Prejudice requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "Surmounting *Strickland's* high bar is never an easy task" because "the *Strickland* standard must be applied with scrupulous care." Harrington v. Richter, 562 U.S. 86, 105 (2011).

The petitioner made statements to this court—in writing and under oath—that he made his plea freely and voluntarily, without threats or promises. In the signed plea agreement, the petitioner acknowledged that he was entering his guilty plea freely and voluntarily because he was guilty and that "no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those in the agreement, to induce the defendant to plead guilty." Criminal Case, Dkt. No. 47 at ¶4, 44. He acknowledged that he understood that the offense carried a minimum term of fifteen years and a maximum of life imprisonment. Id. at ¶6. He acknowledged that the government had agreed to recommend a sentence no greater than the low end of the applicable guideline range. Id. at ¶22. He acknowledged that he understood that the court would be guided by the sentencing guidelines but not bound by those guidelines and could impose a sentence above or below the guideline range. Id. at ¶23. He also acknowledged that he understood he could not withdraw his plea solely because of the sentence imposed by the court. Id. at ¶24. The petitioner signed his name directly below a statement asserting

that he was satisfied that his attorney had provided effective assistance of counsel. Id. at 13.

During the change-of-plea hearing, the petitioner told this court—while under oath—that he was satisfied with his counsel's representation. Criminal Case, Dkt. No. 105 at 9:7-10. He testified that no one had made any kind of threat to force him to accept the plea agreement, id. at 35:5-12. The petitioner testified that no one had promised him anything (other than the one promise in the plea agreement from the government). Id. at 36:12-16. The court explained to the petitioner—and he testified that he understood—that there was no way for a federal judge to "go under" the fifteen-year mandatory minimum absent a motion from the government. Id. at 27:15-22; 33:1-3. The court explained that it would listen to the government's sentencing arguments and to those of the defense but that the court would make the final decision. Id. at 33:4-7. The court found, based on the petitioner's representations to the court, that he pled guilty because he was guilty, that the plea was knowingly, voluntarily and intelligently made, and that the petitioner had effective assistance of counsel. Id. at 37:4-14.

Representations made to the court in the plea agreement and during the plea hearing are "entitled to 'a presumption of verity.'" United States v. Loutos, 383 F.3d 615, 619 (7th Cir. 2004) (quoting United States v. Pike, 211 F.3d 385, 389 (7th Cir. 2000)). The petitioner bears a heavy burden of overcoming that presumption. See United States v. Hardimon, 700 F.3d 940, 944 (7th Cir. 2012). If the court concludes that the defendant committed perjury at the plea

14

proceedings, the court may reject his motion out of hand unless he offers a compelling explanation for his contradiction. Bethel v. United States, 458 F.3d 711, 719 (7th Cir. 2006) (quoting United States v. Peterson, 414 F.3d 825, 827 (7th Cir. 2005)). This is because a plea of guilty is a "not some empty ceremony, and statements made to a federal judge in open court are not trifles that defendants may elect to disregard." United States v. Stewart, 198 F.3d 984, 987 (7th Cir.1999). "Justice would be ill-served, and the utility of the Rule 11 colloquy would be undermined, by allowing [the petitioner] to renege on his representation under oath to the district court." Hutchings v. United States, 618 F.3d 693, 699 (7th Cir. 2010).

The petitioner has not overcome this heavy burden—either in his petition or in his affidavit. Some of statements the petitioner alleges that Attorney Sanders made do not satisfy the first prong of Strickland. For example, it was not objectively unreasonable for Attorney Sanders to state that the government was focusing on sex crimes at the time the petitioner was charged and pled guilty. The government *was* focusing on sex crimes, because those were the crimes the petitioner was alleged to have committed. It was not unreasonable for Attorney Sanders to tell the petitioner that the societal climate was not favorable to people convicted of committing sex crimes. Nor was it unreasonable for Attorney Sanders to discuss with the petitioner (and his family) the sentences federal courts had imposed in other, comparable cases. Attorney Sanders agrees that he and the petitioner had this discussion and

Sanders included comparisons to other cases in his sentencing memorandum.[2] Dkt. No. 18-1 at ¶6. The court itself told the petitioner at the change-of-plea hearing that it could impose a sentence of anywhere from the mandatory minimum of fifteen years to the maximum penalty of life in prison and the petitioner told the court that he understood. Criminal Case, Dkt. No. 105 at 27: 23-25, 28: 1-7.

The same holds true for Attorney Sanders's alleged statement that Jennifer Campbell—the mother of the petitioner's children and his co-defendant in the criminal case—could or would receive fifteen years and that the children could or would be placed in child protective services. In the second superseding indictment, the government charged Jennifer Campbell as the defendant's co-defendant, and like the defendant, she faced a mandatory minimum of sentence fifteen years.[3] Criminal Case, Dkt. No. 18. Attorney Sanders agrees that he and the petitioner discussed what would happen if both the petitioner and the mother of his children were convicted and there was no one else to take their children. Dkt. No. 18-1 at ¶8.

In his affidavit, the petitioner says that his attorney told his daughter and sister that he would not receive more than nineteen years. Dkt. No. 13 at

---

[2] See Criminal Case, Dkt. No. 79 at pages 14-15 (citing ten sex trafficking cases from the Eastern District of Wisconsin that resulted in sentences ranging from 114 to 360 months).

[3] On February 7, 2020—eighteen months after the government charged Campbell—the government filed a motion asking the court to dismiss the indictment as to Campbell. Criminal Case, Dkt. No. 58. The court granted that motion. Criminal Case, Dkt. No. 59.

16

¶5. The petitioner has provided no corroborating evidence for this allegation. The petitioner has not filed an affidavit from either his daughter or his sister. More to the point, at the change-of-plea hearing, this court explained to the petitioner that both his attorney and counsel for the government could make sentencing recommendations, but that the court was not required to follow such recommendations and could impose any sentence above the mandatory minimum and up to the statutory maximum (life); the petitioner said that he understood. Criminal Case, Dkt. No. 105 at 32: 24-25, 33: 1-7.

That leaves one paragraph in his affidavit that the petitioner did not mention in his §2255 motion:

> At my change of plea hearing my attorney prevented me from bringing the facts mentioned above to the court's attention. When the Court provided me with the opportunity to address the "*threats*" regarding my acceptance of the plea agreement, my attorney prevented me from speaking. He asked for a minute and spoke off the record. He informed me to remain quiet and promised that everything would be ok. He stated that we didn't want to "*piss the judge off.*"

Dkt. No. 13 at ¶6 (italics in original). The petitioner's brief says something different; the *brief* says that the petitioner's attorney reminded the petitioner of earlier threats and "reaffirmed his position that Petitioner would suffer drastically if he did not accept the government's plea." Dkt. No. 12 at 5-6.

The sentencing hearing transcript contradicts the petitioner's assertion that his attorney prevented him from speaking. The court first asked whether anyone had said they would harm the petitioner, guaranteed him that he would "go to prison for X. amount of time," or made any kind of threat to try to force

17

him to accept the plea. The petitioner *immediately* responded, "No." Criminal Case, Dkt. No. 105 at 35:5-12. The petitioner told this court that he understood that he and his attorney would be able to make their own recommendation regarding his sentence and that he understood that the government would recommend a sentence at the low end of the guideline range. Id. at 35:21-25, 36:1. The court then asked the petitioner whether anyone had made him any promises to convince him to plead guilty. At that point, the petitioner's counsel *did* ask for a moment, id. at 36:7-9. but after the brief discussion between counsel and the petitioner, the court *again* asked the petitioner whether anyone had "promised you anything other than the one promise in the plea agreement from the Government to get you to accept this guilty plea." The petitioner immediately responded, "No." Id. at 36:12-16; Criminal Case, Dkt. No. 50 at 46:16. This entire exchange occurred on the record, in front of the court. The record shows that no one prevented the petitioner from speaking.

To the extent that the petitioner's affidavit avers that his attorney assured him that everything would be alright, that is not a threat. The statements in the petitioner's brief about his attorney referencing earlier threats and the petitioner "suffering drastically," dkt. no. 12 at 5, are not supported by the paragraph in the petitioner's affidavit, dkt. no. 13 at ¶6, and not supported by the record.

The petitioner requests an evidentiary hearing. The court must grant an evidentiary hearing when a petitioner alleges facts that, if proven, would entitle

18

him to relief. <u>United States v. Coscia</u>, 4 F.4th 454, 482 (7th Cir. 2021). "The court, however, is not required to grant an evidentiary hearing when 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" <u>Id.</u> (citing 28 U.S.C. §2255(b)). "In addition, a hearing is not necessary if the petitioner makes conclusory or speculative allegations rather than specific factual allegations." <u>Daniels v. United States</u>, 54 F.3d 290, 293 (7th Cir. 1995); <u>see also</u> <u>Aleman v. United States</u>, 878 F.2d 1009 (7th Cir. 1989) (rejecting hearing request when petitioner "offer[ed] conjecture, not facts" that certain witnesses were informants).

In deciding whether to grant the petitioner's request for a hearing, the court reviewed several Seventh Circuit decisions remanding for an evidentiary hearing on ineffective assistance of counsel claims. In <u>Daniels v. United States</u>, 54 F. 3d 290, 293 (7th Cir. 1995), the petitioner alleged that his attorney had coerced him into accepting a revised guilty plea because the petitioner could not pay the remaining balance owed his attorney. The petitioner, government and defense counsel asked for an evidentiary hearing, and the petitioner and his attorney filed competing affidavits. <u>Id.</u> The petitioner's affidavit contained detailed and specific allegations about the fee dispute. <u>Id.</u> at 294. The district court declined to hold the hearing, describing the petitioner's claim as "nonsense" that "flies in the face of the record" and "has no credibility." <u>Id.</u> The Seventh Circuit found that the record was insufficient for it determine what occurred and that the petitioner was entitled to an evidentiary hearing if proof of his allegations could result in the invalidation of his plea. <u>Id.</u> In so ruling,

the Seventh Circuit cautioned against relying on affidavits alone to resolve credibility. Id. at 295.

Similarly, in Day v. the United States, 962 F.3d 987, 989 (7th Cir. 2020), the Seventh Circuit found that a district court had abused its discretion in failing to grant an evidentiary hearing where the petitioner argued that retained counsel (the originally-assigned federal defender had withdrawn when the petitioner retained counsel) had advised him to reject a prior plea deal—offered twice—and ended up pleading guilty without a plea agreement; the petitioner's ultimate sentence was considerably higher than the one proposed in the plea agreement. Id. at 989-90. When the petitioner asked for an evidentiary hearing, the government requested affidavits from his private attorneys; one attorney declined to provide an affidavit and the other attorney did not respond. Id. at 991. The district court denied the §2255 motion without a hearing, finding that the petitioner could not show prejudice because the plea agreement would not have bound the court to impose a particular sentence. The Seventh Circuit held that the appropriate inquiry is not whether the court is bound by the agreement but whether it is reasonably probable that the court would have accepted the terms of the agreement and the resulting sentence would have been less severe than the one imposed. Id. at 993. The Seventh Circuit suggested that few court observers would contend that the "government's views as reflected in its plea stipulations and Guidelines recommendations have no influence on a judge's real-world sentencing decisions." Id. In terms of prejudice, the Seventh Circuit found that the district court had not addressed

whether it was reasonably probable that the petitioner would have accepted the plea offer had he been advised to do so. <u>Id.</u> at 994. The petitioner's father submitted a declaration corroborating his son's assertion that he would have accepted. <u>Id.</u> With this evidence, the Seventh Circuit concluded that the petitioner had met the "relatively light" burden to warrant a hearing on his claim. <u>Id.</u>

Neither <u>Daniels</u> nor <u>Day</u> involved statements made by the petitioner to the court, testifying under oath that no promises or threats were made. Everyone in <u>Daniels</u> agreed that a hearing was necessary; the petitioner in <u>Day</u> offered corroborating evidence to meet his burden. These cases stand in contrast to the record in this case where the petitioner swore multiple times in open court that he was not pressured to plead guilty, where he agreed in the plea agreement and in open court under oath that no promises had been made to induce him to plea guilty and where the plea agreement and the court advised him that the court was free to impose any sentence between the statutory minimum and maximum sentences. The petitioner swore under oath that he understood and that he was pleading guilty because he *was* guilty— without threats or promises. And the arguments in the petitioner's brief about his attorney's off-the-record comments during the plea hearing are not supported by his own affidavit. There is no basis for a hearing on this record.

## III. Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2255 Proceedings, "the district court must issue or deny a certificate of appealability when it enters a

21

final order adverse to the applicant. A court may issue a certificate only if the applicant makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petitioner should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 673, 484 (2000) (internal quotations omitted). The court declines to issue a certificate of appealability because reasonable jurists could not debate that the petitioner is not entitled to *habeas* relief under 28 U.S.C. §2255.

## IV. Conclusion

The court orders that the petitioner's motion to vacate, set aside or correct his sentence under 28 U.S.C. §2255 is **DENIED**. Dkt. No. 1.

The court **DECLINES TO ISSUE** a certificate of appealability.

The court orders that the case is **DISMISSED**. The clerk will enter judgment accordingly.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

22